WARNER, J.
Appellant, Frank Huggins, challenges his conviction of carrying a concealed weapon by a convicted felon, claiming that a suppression hearing was held when he was without counsel and that ■ the state committed a Brady violation by withholding fingerprint evidence that undermines confidence in the result. Because Huggins did not file a motion to suppress, absence of counsel at his co-defendants’ suppression hearing did not result in reversible error. Although the state concedes that it failed to disclose Brady material, appellant has not shown that'the fingerprint evidence would have placed the case in such a different light as to undermine confidence in the result, as the trial court was the finder of fact in this non-jury trial and the court announced that the fingerprint evidence would not have changed the result.
The police executed a search warrant at a residence where, they suspected that dog fighting was - occurring. When they entered the shed attached to the residence, fifty to sixty people were watching a dogfight. Agent Collister entered the ring first and saw Huggins to the right of the doorway. He noticed that Huggins’s shirt was untucked and there was a large bulge around his belt. Collister ordered Huggins to the ground and-used a leg sweep to bring him down. Huggins said he was afraid of - the dogs, so Collister grabbed him by the back of the belt and lifted him up, at which point Collister felt the belt give way and saw a firearm fall to the floor. Collister did not actually see where the gun came from, but he saw it falling from Huggins’s body. He was certain that no gun was on the ground prior to him bringing Huggins to the ground. After gaining possession of the gun and. lifting up Huggins, the bulge in his pants was gone. Collister was certain the gun came from Huggins’s belt line.
Huggins was charged with carrying a concealed weapon by a convicted felon and attending a dogfight. Two other defendants with charges relating to the dog fighting moved to suppress based upon the invalidity of the search warrant. Huggins’s counsel did not file a motion to suppress. Prior to the hearing on the motion, Huggins’s attorney withdrew, and Huggins personally appeared at the hearing on his co-defendants’ motions. He claims it was error for the trial court to proceed with the motions to suppress while he was unrepresented. However, the hearing on the motions was not a critical stage of the proceeding for him because he had not joined in the motions; he was merely present at the hearing. Although at the hearing the state suggested to the court that Huggins had no standing to contest the warrant because he was not a resident of the household, there was no order denying the motions to suppress with respect to Huggins. It was not reversible error to proceed with the co-defendants’ motions to suppress where Huggins was not represented by counsel.
*509 Huggins waived a jury trial and proceeded to a. bench trial. Agent Collis-ter testified as to his observations at the dogfight. Additionally, a second deputy asserted that he saw the gun on the floor next to Huggins but did not see where it fell from. Counsel for Huggins cross-examined the officers regarding fingerprints on the gun. They testified that the gun was not tested for fingerprints. Three persons present at the dogfight testified for the defense that they did not see Huggins with a gun in his possession. In closing, Huggins’s counsel stressed the fact that Collister did not see the gun except on the floor, and the gun was not tested for fingerprints. The trial court found Huggins ‘guilty.
After the trial, new defense counsel discovered that the gun had in fact been tested for fingerprints. .A latent print was developed, which did not match Huggins’s prints or those of anyone else known to the police. Counsel moved for a new trial on the ground that the state’s failure to disclose Brady material prejudiced Huggins. At the hearing, an investigator testified to locating the fingerprint. The prosecutor, who had not known about the print which was in the possession of the sheriffs department, admitted that it should have been disclosed. He argued that the failure to disclose the print did not amount to prejudice under Brady because of the strong evidence presented by Agent Collis-ter who saw the gun fall from Huggins’s body as he moved Huggins. Further, the prosecutor argued that the absence of evidence of Huggins’s fingerprints on the gun could be explained in several ways. The judge agreed, and, as he was the trier of fact, concluded that the fingerprint evidence would make no difference in the result given the very positive testimony of the deputies. After sentencing, Huggins appealed his conviction.
Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) held “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Evidence is material “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In Strickler v. Greene, 527 U.S. 263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Court explained,
As we made clear in Kyles, [v. Whitley, 514 U.S. 419, [115 S.Ct. 1555, 131 L.Ed.2d 490] (1995) ] the materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury’s conclusions. Id., at 434-435, 115 S.Ct. 1555. Rather, the question is whether “the favorable evidence could reasonably be taken to put the whole- case in such a different light as to undermine confidence in the verdict.”. Id., at 435, 115 S.Ct. 1555.
We cannot conclude that the fingerprint evidence, when placed against the strong testimony of Agent Collister who was positive that the gun dropped from Huggins’s waistband, would “put the whole case in such a different light as to undermine confidence in the verdict.” Id. This is particularly so in Huggins’s case, because the trial court, which was the trier of fact, determined this evidence would not have changed the result. Although at the hearing and on appeal, Huggins argued that had he known about the fingerprint evidence he would not have waived trial by jury, we can find no case in which a court *510 reversed because the inclusion of Brady material would have changed counsel’s trial strategy and procedural choices. The question is whether there was a reasonable probability that the result would have been different. We cannot say that-it would.
Affirmed.
KLEIN and HAZOURI, JJ„ concur.